# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| CHRISTINE G., | ) No. ED CV 18-2666-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

## I.
## PROCEEDINGS

Christine G.[1] ("plaintiff") filed this action on December 27, 2018, seeking review of the Commissioner's[2] denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

a Magistrate Judge on January 15, 2019, and January 30, 2019. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on August 7, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1964. [Administrative Record ("AR") at 201.] She has past relevant work experience as a loan processor. [Id. at 25, 62.]

On April 29, 2015, plaintiff filed an application for a period of disability and DIB, and an application for SSI payments, alleging that she has been unable to work since September 1, 2006. [Id. at 15, see 199, 201-09.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 140-41.] A hearing was held on January 18, 2018, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [Id. at 31-65.] A vocational expert ("VE") also testified. [Id. at 61-63.] On April 3, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from September 1, 2006, the alleged onset date, through April 3, 2018, the date of the decision. [Id. at 15-26.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 196.] When the Appeals Council denied plaintiff's request for review on October 26, 2018 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since September 1, 2006, the alleged onset date.[3] [AR at 18.] At step two, the ALJ concluded that

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. [AR at 18.] As noted by the ALJ, with regard to plaintiff's application for DIB, she must be found disabled by or before December 31, 2011, in order to receive those benefits, and with respect to her April 29, 2015, application for SSI
(continued...)

plaintiff has the severe impairments of obesity; right ankle tendinitis; right knee status post total knee replacement; lumbar spine degenerative disc disease; facet arthropathy and radiculopathy; cervical spine degenerative disc disease and radiculopathy; migraine headaches; and chronic pain. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 20.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[5] as follows:

> [She] is never to climb ladders, ropes, or scaffolds; she may occasionally climb ramps or stairs; she may frequently balance; and she may occasionally stoop, kneel, crouch, and crawl.

[Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a loan processor. [Id. at 25.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of September 1, 2006, through April 3, 2018, the date of the decision. [Id. at 26.]

/

## V.
## **THE ALJ'S DECISION**

---

[3](...continued)
payments, she is eligible for benefits only since May 14, 2015. [Id. at 15.] Thus, the ALJ considered plaintiff's disability applications "under two distinct adjudication periods": (1) from September 1, 2006, through December 31, 2011; and (2) from May 14, 2015, through the date of the decision. [Id.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

Plaintiff contends that the ALJ erred when she failed to articulate specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further proceedings.

**A.  SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony. [Id.]

The ALJ summarized plaintiff's testimony as follows:

> [She] testified she originally injured her right knee and ankle in 2003. She alleged since then she had multiple surgeries on her right knee with hardware inserted in her shin and anticipated additional surgical procedures. She stated she underwent total knee replacement in 2011. [She] asserted she had used a walker and a cane to assist with ambulation and most recently used a cane about two days prior to the hearing. She maintained she continued to have limited motion of the right knee and could not squat. [She] estimated she could not walk for more than 20 minutes, could not lift more than 5 pounds, could not sit for more than 15 minutes at a time, and could not stand for more than 15 minutes at a time. [She] also complained of pain in her low back and neck and contended she essentially experienced daily pain from her neck to her toes. However, she maintained she experienced the most pain in her low back and right knee, which was constant. [She] testified in a typical day she had to lie down about 80% of the day.

[AR at 21.]

The ALJ discounted plaintiff's subjective symptom testimony as follows:

> Despite her impairments, [she] has engaged in a somewhat normal level of daily activity and interaction. . . .
>
> The consistency of [her] allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The medical evidence indicates [she] received routine conservative treatment for complaints of multiple orthopedic issues and migraine headaches. The lack of more significant objective medical evidence to support her subjective complaints suggests [her] symptoms and limitations were not as severe as she alleged. The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein.

[Id. at 21-22 (citation omitted).]

/

Prior to the ALJ's assessment in this case, Social Security Ruling ("SSR")[6] 16-3p went into effect. See SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).[7] SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *2. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; Trevizo, 871 F.3d at 678 n.5. Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit also noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

[7] SSR 16-3p, originally "effective" on March 28, 2016, was republished on October 25, 2017, with the revision indicating that SSR 16-3p was "applicable [rather than effective] on March 28, 2016." See 82 Fed. Reg. 49462, 49468 & n.27, 2017 WL 4790249, 4790249 (Oct. 25, 2017); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Other than also updating "citations to reflect [other] revised regulations that became effective on March 27, 2017," the Administration stated that SSR 16-3p "is otherwise unchanged, and provides guidance about how we evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims . . . ." Id. The Ninth Circuit recently noted that SSR 16-3p is consistent with its prior precedent. Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (SSR 16-3p "makes clear what [Ninth Circuit] precedent already required"). Thus, while SSR 16-3p eliminated the use of the term "credibility," case law using that term is still instructive in the Court's analysis.

and apparent truthfulness.'" Trevizo, 871 F.3d at 678 n.5 (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Trevizo, 871 F.3d at 678 (citing Garrison, 759 F.3d at 1014-15). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ must consider a claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication taken to alleviate pain or other symptoms; treatment, other than medication received for relief of pain or other symptoms; any other measures used to relieve pain or other symptoms; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; see also Smolen v. Chater, 80 F.3d 1273, 1283-84 & n.8; SSR 16-3p, 2017 WL 5180304, at *4 ("[The Commissioner] examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.").

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a finding of malingering, the ALJ's reasons for rejecting a claimant's subjective symptom statements must be specific, clear and convincing. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Trevizo, 871 F.3d at 678 (citing Garrison, 759

F.3d at 1014-15); Treichler, 775 F.3d at 1102.  "General findings [regarding a claimant's credibility] are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Burrell, 775 F.3d at 1138 (quoting Lester, 81 F.3d at 834) (quotation marks omitted).  The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'"  Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)).  A "reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."  Bunnell, 947 F.2d at 346.  As such, an "implicit" finding that a plaintiff's testimony is not credible is insufficient.  Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (per curiam).

In determining whether an individual's symptoms will reduce her corresponding capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner, the ALJ "will consider the consistency of the individual's own statements."  SSR 16-3p, 2017 WL 5180304, at *8-9; see also Ghanim v. Colvin, 763 F.3d 1154, 1163-64 (9th Cir. 2014).  In doing so, the ALJ "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  Id.  "If an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another and consistent with the objective medical evidence and other evidence in the record," the ALJ will determine that an individual's symptoms are more likely to reduce her capacities for work-related activities or reduce the abilities to function independently, appropriately, and effectively in an age-appropriate manner.  Id. at *9.  The ALJ will recognize, however, that inconsistencies in an individual's statements made at varying times "does not necessarily mean they are inaccurate," as symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time.  Id.

Here, in discounting plaintiff's testimony, the ALJ found the following:  (1) plaintiff's subjective complaints were not supported by the objective evidence; (2) plaintiff's treatment was

9

conservative; and (3) plaintiff's daily activities were inconsistent with her allegations of disabling functional limitations. [AR at 21.]

### 1. Testimony Inconsistent with the RFC

Preliminarily, the ALJ found that plaintiff's "allegations concerning the intensity, persistence and limiting effects of her symptoms" were "inconsistent with the residual functional capacity assessment herein." [Id.]

The Court observes that "[b]ecause the claimant's symptom testimony must be taken into account when the ALJ assesses the claimant's RFC, it cannot be discredited because it is inconsistent with that RFC." Laborin v. Berryhill, 867 F.3d 1151, 1154 (9th Cir. 2017). Thus, the ALJ cannot "properly evaluate the claimant's credibility based on a predetermined RFC" and, to do so, "puts the cart before the horse." Id. at 1154 & n.4. That is because, without more, the Court cannot simply infer from that language "'that the ALJ rejected [the claimant's] testimony to the extent it conflicted with the medical evidence'" as summarized by the ALJ. Id. at 1154-55 (quoting Treichler, 775 F.3d at 1103) (alteration in original). Indeed, the use of this language by the ALJ implies that she arrived at an RFC determination for sedentary work with various limitations and *then* found that plaintiff's subjective symptom testimony supported that determination, rather than conducting a "thorough discussion and analysis of the objective medical and other evidence, *including the individual's complaints of pain and other symptoms*" and taking that information "into account *when determining* the RFC." Id. at 1153 (citing Garrison, 759 F.3d at 1011) (emphases added). This is an insufficient basis for discrediting testimony, but the error may be harmless if the ALJ provides other legally sufficient reasons for discounting the claimant's testimony. Id. at 1154-55. As discussed below, the ALJ did not provide any legally sufficient reasons for discounting plaintiff's testimony. Thus, the error in this case was not harmless.

### 2. Objective Evidence

While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 871

10

F.3d at 679 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ must consider in his credibility analysis."); SSR 16-3p, 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities for an adult"). "The intensity, persistence, and limiting effects of many symptoms can be clinically observed and recorded in the medical evidence. . . . These findings may be consistent with an individual's statements about symptoms and their functional effects. However, when the results of tests are not consistent with other evidence in the record, they may be less supportive of an individual's statements about pain or other symptoms than test results and statements that are consistent with other evidence in the record." SSR 16-3p, 2017 WL 5180304, at *5. As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted).

Here, the ALJ stated her conclusion that plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the residual functional capacity assessment." [AR at 21.] She also stated that the "consistency of [plaintiff's] allegations regarding the severity of her symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." [Id. at 22.] The ALJ then summarized the medical evidence from 2006 through 2017, only once mentioning plaintiff's subjective symptom testimony: the ALJ stated that plaintiff presented on March 9, 2015, for a pain management evaluation and, at that time, complained of neck pain and spasms radiating into her right upper extremity, low back pain radiating into the bilateral lower extremities, and lower extremity pain primarily in the right leg that was on average a 6/10 pain scale with medication treatment. [Id. at 23 (citation omitted).] At that visit, however, the examination actually showed "cervical spine spasm and tenderness . . . with diminished range of motion and a sensory examination showed decreased sensation in the right upper extremity affecting the C4-C6

dermatome." [Id.] As further acknowledged by the ALJ:

> The examination also showed lumbar spine muscle *spasm* and *tenderness* with *severely limited* range of motion secondary to pain, *decreased* sensitivity to touch along the L4-S1 dermatome in the right lower extremity that was consistent with prior findings, *positive* straight leg raise in the seated position on the right at 30 degrees, and tenderness to palpation at the right hip. [Plaintiff] continued to receive medication treatment to alleviate her pain symptoms. Subsequent examinations on May 4, 2015 and June 1, 2015 were consistent with these findings.

[Id. (emphases added) (citations omitted).] This example, therefore, rather than providing support for the ALJ's determination that the objective evidence *did not* support plaintiff's testimony, instead lends *support* to plaintiff's subjective symptom complaints.

Similarly, plaintiff's medical history as recited, in part, by the ALJ, also reads like a litany of *support* for plaintiff's complaints:

- noting plaintiff's "history of degenerative issues relating to the right knee," the ALJ observed that in July 2006 plaintiff was provided a brace to improve her range of motion; examination showed "weakness to resistance to knee extension and tenderness over the patellar tendon with some numbness along the lateral border of her leg"; she also observed that subsequent examinations through October 2006 were "generally consistent with these findings, as [plaintiff] received conservative treatment including pool therapy" [id. at 22 (citing id. at 487-505)];

- a November 2006 MRI study of the right ankle showed "tendinitis involving the flexor hallucis tendon and hypertrophic changes seen in the posterior subtalar joint" [id. (citing id. at 483-84)];

- a March 2008 MRI of the right knee showed grade II signal in the medial and lateral menisci, but no evidence of a cruciate tear [id. (citing id. at 481)];

- a December 2009 nerve conduction study of the lower extremities showed bilateral superficial peroneal neuropathy, and the electrodiagnostic evidence was "suggestive of mild irritation of the right L5 nerve root"; a neurological examination on this date showed sensation and reflexes were intact and motor strength was 5/5 (that note also reflects, however, that plaintiff had undergone five surgeries to her right knee as of that date; reflects an antalgic gait; reflects slight tenderness at L5-S1; and reports isolated sharp waves identified in the EMG test in the right tibialis anterior and tibialis posterior [id. (citing AR at 475, 479-80)];

- a June 2010 MRI of the lumbar spine showed an L3-L4 posterior disc bulge and L5-S1 moderate bilateral neural foraminal narrowing secondary to posterior disc bulge and facet joint hypertrophy [id. (citing 472-74, 936)];

- a May 2013 MRI of the lumbar spine showed L3-L4 disc protrusion with an annular tear effacing the anterior thecal sac [JS at 12 (citing AR at 468-69)];

- a May 2013 MRI of the cervical spine revealing mild left foraminal narrowing at C4-C5, and mild central canal stenosis and severe bilateral neural foraminal narrowing at C5-C6 [id. (citing AR at 470)];

- right knee total arthroplasty in September 2011, with August 2012 "correctional osteotomy on the proximal tibia" [AR at 22 (citing id. at 531)];

- a March 2015 pain evaluation as discussed above [id. at 23 (citing id. at 656-84)];

- a June 2015 cervical spine epidural injection [id. (citing id. at 799-800)];

- between June 2015 and April 2016, examinations "remained consistent with the March 2015 examination findings" in that plaintiff "continued to receive conservative medication treatment" [id. (citing AR at 758-98, 1013-54)];

- another cervical spine epidural injection in June 2016 [id. (citing id. at 1056-57)], and subsequent pain management examinations "remained consistent with prior findings, as [she] appeared to remain at a stable baseline level with no evidence of significant improvement or additional deterioration in her physical impairments" [id. (citing AR at 902-92)];

- a December 2016 "examination showed right knee range of motion . . . pain with movements and restriction" but no evidence of swelling, effusion, or tenderness [id. (citing id. at 827-37)];

- a May 2017 right hip injection [id. (citing id. at 1055)];

- a July 10, 2017 pain management examination that revealed plaintiff continued to have tenderness to palpation of the right hip and right knee, range of motion of the right knee was decreased due to pain, and a motor examination that showed moderately decreased strength in the right lower extremity with crepitus [id. (citing id. at 872-91, 895)];

- on July 19, 2017, plaintiff was seen for her complaints of sharp and throbbing headaches [id. (citing id. at 818-20)]; and

- on August 22, 2017, plaintiff was again treated for headache pain [id. (citing id. at 815-17)].

The "ALJ must identify the testimony that [is being discounted], and *specify* 'what evidence undermines the claimant's complaints.'" Treichler, 775 F.3d at 1103 (citation omitted) (emphasis added); Brown-Hunter, 806 F.3d at 493. Here, the ALJ did not identify the testimony she was discounting and "link that testimony to the particular parts of the record" supporting her determination. Brown-Hunter, 806 F.3d at 494. Indeed, the ALJ's running narrative regarding plaintiff's medical records did not provide "the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected

the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony. Even assuming this was a specific, clear and convincing reason for discounting plaintiff's testimony, the ALJ's determination to discount plaintiff's subjective symptom testimony for this reason rises or falls with the ALJ's other grounds for discrediting plaintiff. As seen below, those other grounds are insufficient as well.

### 3. Conservative Treatment History

The ALJ also discounted plaintiff's allegations because "the medical evidence indicates [she] received routine conservative treatment for complaints of multiple orthopedic issues and migraine headaches. The lack of more significant objective medical evidence to support her subjective complaints suggests [her] symptoms and limitations were not as severe as she alleged." [AR at 22.]

An ALJ may properly rely on the fact that only routine and conservative treatment has been prescribed. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). "Conservative treatment" has been characterized by the Ninth Circuit as, for example, "treat[ment] with an *over-the-counter pain medication*" (see, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (emphasis added); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that the ALJ properly considered the plaintiff's use of "conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset")), or a physician's failure "to prescribe . . . any serious medical treatment for [a claimant's] supposedly excruciating pain." Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999).

Stating that the ALJ's reasoning is "plainly false," plaintiff notes that the record reflects that she underwent numerous surgeries on her right knee prior to the total knee replacement in 2011; she underwent a post-correction osteotomy of her right tibia in August 2012; and, in 2013, Simon

Lavi, M.D., "requested consideration of a surgical approach at the C4-C5 and C5-C6 levels." [JS at 10 (citing AR at 575, 944).] She also notes her extensive pain management treatment with Dr. Baker, and itemizes the numerous epidural injections, Toradol injections, and narcotic pain medications, some of which were also outlined above. [Id. (citations omitted).]

Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be "conservative" treatment. See, e.g., Garrison, 759 F.3d 995, 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (criticizing an ALJ for characterizing treatment as "conservative" where the treatment included "copious amounts of narcotic pain medication as well as occipital nerve blocks and trigger point injections," as well as cervical fusion surgery); Yang v. Barnhart, 2006 WL 3694857, at *4 (C.D. Cal. Dec. 12, 2006) (ALJ's finding that claimant received conservative treatment was not supported by substantial evidence when claimant underwent physical therapy and epidural injections, and was treated with several pain medications); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize treatment with narcotics, steroid injections, trigger point injections, and epidural injections as conservative); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."); see also Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [a prescribed narcotic] is 'conservative' or in conflict with Plaintiff's pain testimony"); but see JS at 22-23 (citing cases).

Here, based on the foregoing authorities and plaintiff's treatment history, the Court rejects the ALJ's conclusion that plaintiff's course of treatment -- consisting of not only multiple surgeries (conducted and/or recommended), but also extensive pain management treatment including multiple cervical and lumbar epidural injections, "numerous Toradol injections . . . for increased pain," and use of narcotic medications for pain; use of a knee brace; and use of ambulatory devices -- was conservative. Additionally, the ALJ failed to articulate what, if any, treatment other than multiple surgeries and extensive pain management treatment as detailed above, was

currently recommended or available for plaintiff's multiple orthopedic issues and other physical impairments. The ALJ points to no evidence in the record that anything else had been recommended for plaintiff by a physician or was warranted for her conditions. Additionally, the ALJ failed to point to anything in the record to show that any specific treatment other than the treatment plaintiff had been receiving is a standard method for treating individuals with the type of pain or other limitations caused by plaintiff's physical impairments.

Thus, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 4. Daily Activities

The ALJ found that plaintiff "has engaged in a somewhat normal level of daily activity and interaction." [AR at 21.] She described plaintiff's daily activities as follows:

> [She] reported in the year preceding the hearing she lived in an apartment by herself. She did not report any particular difficulty maintaining her home or taking care of her personal hygiene and did not report that anyone helped her with these things as she lived alone. She reported she did not have any significant difficulty driving and indicated she would visit family members that were about half an hour away. She also reported she did her own grocery shopping and took short walks around her apartment complex. [She] also reported to the psychiatric consultative examiner, she had no difficulty managing funds or paying bills, was able to cook, she played with her grandson and read to him, she maintained close relationships with family members and close friends, and she had no problems maintaining attention. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. [Her] ability to participate in such activities was inconsistent with [her] allegations of disabling functional limitations. Additionally, they further support the medical records in finding [she] was capable of performing work consistent with the residual functional capacity finding contained herein.

[Id.]

An ALJ may discredit testimony when a claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Molina, 674 F.3d at 1113. However, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009)). "Engaging in daily

activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." Trevizo, 871 F.3d at 682 (citing Ghanim, 763 F.3d at 1165).

Plaintiff contends that her "ability to perform some of the aforementioned activities is far more limited than the ALJ portrays." [JS at 7.] She notes, for instance, that she testified that she can cook simple things "as long as it does not require her 'to stand for long periods'"; she can bathe but cannot sit for very long; she has difficulty getting up off the toilet; she does her own laundry, but only for a couple of hours every two weeks; she shops, but only goes twice a month for an hour; she reads, but not for too long because it causes pain in her neck, arm, and back; and she spends time with her grandson but that consists of reading and watching cartoons. [Id. at 7-8 (citing AR at 244-47).] She contends, therefore, that the ALJ's assertion that plaintiff's daily activities are inconsistent with her allegations of pain is analogous to the conclusion of the ALJ that was rejected by the Ninth Circuit in Garrison (id. at 8-9):

> We have repeatedly warned that ALJs must be especially cautious in concluding the daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day. See, e.g., Smolen, 80 F.3d at 1287 n. 7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," we have held that "[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed limitations would these activities have any bearing on [her] credibility." Reddick v. Chater, 157 F.3d [715,] 722 [9th Cir. 1998] (citations omitted); see also Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)).

Garrison, 759 F.3d at 1016.

The Court agrees with plaintiff. Although the ALJ specifically identified some of the daily activities admittedly engaged in by plaintiff and found that they demonstrated that plaintiff was able to perform sedentary work within the RFC determination or were "inconsistent with [her]

allegations of disabling functional limitations" [AR at 21], the amount of involvement plaintiff described in these activities was minimal. [See id. at 37-38, 46-53, 243-50.] Accordingly, the ALJ's finding that plaintiff's subjective symptom testimony regarding the limiting effects of her symptoms was inconsistent with her daily activities was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

Moreover, although the ALJ also concluded that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," the ALJ did not explain how plaintiff's daily activities are transferable to a work setting. "[I]f a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." Fair, 885 F.2d at 603 (emphasis in original). An ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citation and alteration omitted). Here, the ALJ neither made specific findings nor pointed to any record evidence to support her conclusion that plaintiff's daily activities and interactions were in some way transferable to a work setting. See id.

This was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

**B.    CONCLUSION**

The Court finds the ALJ's subjective symptom testimony determination to be virtually indistinguishable from the subjective symptom testimony determination rejected by the Ninth Circuit in Brown-Hunter. As in Brown-Hunter, the ALJ here "simply stated her . . . conclusion [regarding plaintiff's subjective symptom testimony] and then summarized the medical evidence supporting her RFC determination." Brown-Hunter, 806 F.3d at 494. Although the ALJ also briefly summarized plaintiff's daily activities, she did not then identify the testimony she found not credible, and "link that testimony to the particular parts of the record" supporting her non-credibility

determination. Id. Neither did she demonstrate that plaintiff's treatment had been routine and conservative. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id.

Remand is warranted on this issue.

## VI.
## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo, 871 F.3d at 682 (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations regarding her symptoms and limitations, and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Next, based on her reevaluation of plaintiff's subjective symptom testimony, and considered in light of the medical evidence of record, the ALJ shall determine whether the RFC determination should have been more restrictive than the RFC

set forth in the 2018 Decision.[8] Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the assistance of a VE if necessary, whether plaintiff can perform her past relevant work or any other work existing in significant numbers in the regional and national economies. See Shaibi v. Berryhill, 883 F.3d 15102, 1110 (9th Cir. 2017).

VII.

**CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 27, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] Nothing in this Opinion is intended to disrupt the ALJ's determinations that (1) plaintiff has *at least* the severe impairments of obesity; right ankle tendinitis; right knee status post total knee replacement; lumbar spine degenerative disc disease; facet arthropathy and radiculopathy; cervical spine degenerative disc disease and radiculopathy; migraine headaches; and chronic pain, and (2) plaintiff is able to perform no more than a range of sedentary work. [See AR at 20.]